**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-1030
_____

ISSA YOUSSOUF NOUR,

                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A98-929-654)
Immigration Judge:  Honorable Frederic G. Leeds

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 24, 2010

Before: MCKEE, Chief Judge, HARDIMAN and COWEN, Circuit Judges

(Opinion filed: June 9, 2010)
_____

OPINION
_____

PER CURIAM

    Issa Youssouf Nour, a.k.a. Nour Issa Youssouf, apparently a native and citizen of

Chad,[1] entered the United States in October 2005 as a nonimmigrant student to attend a language school in New York. He did not attend the school, and the Government charged him with removability for failing to comply with the conditions of his status. Nour conceded the charge and applied for asylum, withholding, and protection under the Convention Against Torture ("CAT").

The IJ made an adverse credibility determination and denied Nour's claims for asylum and withholding on that basis. The IJ denied the CAT claim on the grounds that Nour's "claims [we]re not credible" and that Nour did not "present any additional evidence to indicate that it is more likely than not that he would be tortured if removed to Chad." The Board of Immigration Appeals ("BIA") dismissed Nour's subsequent appeal, ruling that the IJ's credibility finding was not clearly erroneous and was supportable under the REAL ID Act standards. The BIA further held that Nour did not present "any credible evidence, independent of the [IJ's] adverse credibility finding, that he would more likely than not be tortured" in Chad. Also, the BIA rejected Nour's claims of due process violations and held that the IJ did not err in denying a continuance.

Nour, through counsel, submits a petition for review. He argues that, for various reasons, the adverse credibility finding is not supported by substantial evidence. He

---

[1] All the evidence in the record (including identity documents) suggests that Nour is a native and citizen of Chad. In conceding removability, Nour necessarily agreed with one basis for the charge – that he is a native and citizen of Chad. However, the Immigration Judge ("IJ") stated that Nour "is allegedly a native and citizen of Chad," and the Board of Immigration Appeals wrote that Nour "claims to be a native and citizen of Chad."

contends that the adverse credibility determination was made in violation of the REAL ID

Act and is otherwise inconsistent with applicable law. Nour also states that the IJ

erroneously relied on the adverse credibility determination to conclude that Nour could

not make out a claim of future persecution.

We have jurisdiction over Nour's petition under 8 U.S.C. § 1252. We review

factual findings, like an adverse credibility determination, for substantial evidence.

See Butt v. Gonzales, 429 F.3d 430, 433 (3d Cir. 2005). An adverse credibility finding

must be afforded substantial deference, so long as the finding is supported by sufficient,

cogent reasons. See id. at 434. We evaluate whether the credibility determination was

"appropriately based on inconsistent statements, contradictory evidences, and inherently

improbable testimony . . . in view of the background evidence of country conditions."[2]

Chen v. Ashcroft, 376 F.3d 215, 223 (3d Cir. 2004).

---

[2] We recognize that the parties present competing arguments regarding the standard that an IJ must follow in making credibility determinations. We note that before the enactment of the REAL ID Act of 2005, an adverse credibility determination could be based on inconsistencies only if the inconsistencies went to the heart of the claim. See Chukwu v. Attorney Gen. of the United States, 484 F.3d 185, 189 (3d Cir. 2007). However, a new REAL ID Act standard, which provides that "credibility determinations may be made 'without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim,'" applies to Nour's case because he filed his application for relief from removal after May 11, 2005. See id. (quoting the REAL ID Act); see also Kaita v. Attorney Gen. of the United States, 522 F.3d 288, 296 (3d Cir. 2008). Although we have not yet spoken on what the change in the law means, we note that we would come to the same conclusion about the credibility determination in this case under the pre-REAL ID Act standard and any stricter standard of review that follows from the REAL ID Act. See, e.g., Lin v. Mukasey, 534 F.3d 162, 167 (2d Cir. 2008).

3

In this case, a reasonable adjudicator would not be compelled to make a favorable credibility determination, see Xie v. Ashcroft, 359 F.3d 239, 243 (3d Cir. 2004) (explaining that an adverse credibility finding must be upheld unless any reasonable adjudicator would be compelled to conclude to the contrary), because there are inconsistencies in the record. In his affidavit (found at R. 616-22), Nour described the main event on which he based his claims for relief from removal as occurring "not until October 2005, when [he] was 21 and had graduated from high school." R. 617. Specifically, he averred that soldiers, including an important general, arrived in the middle of the night some time in October to arrest his father for allegedly engaging in revolutionary activities. They broke down the door to the family compound and beat his father with their weapons without saying a word. As the eldest son, he stepped in to try to help his father, and a couple of the solders pushed him away, kicked him, and dragged him hard enough across a bumpy cement floor to leave scars. Nour yelled curses as the soldiers took his father to the general's waiting Land Cruiser. When he heard the general yell to the soldiers to arrest him, he took off running for several blocks and did not stop until he reached the house of his father's friend. His father's friend explained that his father supported a rebellion (the Mouvement pour la Democracie et la Justice a Tchad or the MDJT). His friend hid him, sent him to get a visa,[3] and helped him leave the country. In his supplemental affidavit, Nour stated that the arrest of his father occurred "after [he]

---

[3] His visa was issued on October 12, 2005. R. 633.

finished . . . high school in 2005." R. 312. However, he testified at the hearing that the soldiers came to his family's compound on or about August 14, 2005.

It cannot be said the difference in the dates is insignificant. Although Nour testified about his ethnic Anakaza/Gourane background, his influential political family (including ties to the king of the Anakaza people), and his father's and other relatives' past military service, he based his claim primarily on the incident that occurred at his family's compound. Yet, he reported the date as October in his first affidavit, did not specify the date in the supplemental affidavit, and testified at the hearing that the event occurred in August. (He also stated that he remained at his neighbor's home from August to October.) To explain the discrepancy, Nour stated that he was confused when he first arrived in the United States alone. R. 261. However, his affidavit was not prepared until August 2006, approximately 10 months after his arrival. R. 236. Moreover, in a clinical interview in February 2007 preceding a medical examination to document his injuries, it appears that Nour stated that he incurred the injuries from the soldiers in October 2005. R. 433.

Another inconsistency in the record that put in doubt Nour's account is his description of his mother's visits to his imprisoned father. In his affidavits, Nour stated that his mother visited his imprisoned father once a week to bring him food. R. 315 & 621. However, he testified that his mother saw his father twice in 2005 and no other time since his arrest. R. 184-85. Although Nour, who speaks at least some English, R. 260-

5

61, made an argument about the translation, R. 280, he stated at the start of the hearing that the documents supporting his claim were accurate, R. 176. Nour also argues in his brief that his statements about the visits was hearsay evidence based on telephone conversations under difficult circumstances, Petitioner's Brief 30; however, Nour did not apprise the IJ of this explanation of the inconsistencies when he testified, R. 238-39.

The IJ and BIA also noted that Nour had submitted a fraudulent birth certificate to Canadian authorities five months after he arrived in the United States in an effort to circumvent the Safe Third Country rules. Although that document is unrelated to his account, the IJ and the BIA concluded that its submission undermined Nour's credibility.

Although the IJ also discussed the issue of corroboration, he listed the individual inconsistencies to arrive at the negative credibility finding. IJ's Decision 10-11. The BIA concluded that the adverse credibility finding was supported by the record without considering the corroboration issue. Accordingly, because the inconsistencies provide independent support for the adverse credibility finding, we do not consider the IJ's corroboration analysis (or the parties' arguments relating to it). Contrary to the arguments Nour advances, the inconsistencies identified have a basis in the record and are not so minor as to not support the adverse credibility finding. Also, despite Nour's claim to the contrary, the IJ did not need to evaluate the facts regarding persecution on the assumption that Nour was a credible witness.

The adverse credibility finding, for which there is support in the record, means that

Nour cannot make out an individualized claim of past or feared future persecution to support his claims of asylum and withholding. The lack of credible testimony and absence of other evidence also barred the CAT claim. For these reasons, we will deny the petition for review.